SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                        Plaintiff,

       -against-

ALLSTATE FIRE AND CASUALTY COMPANY

                     Defendant.
----------------------------------------x

Index No.:

09100054

The basis of the
venue is CPLR §509

**SUMMONS WITH NOTICE**

To the above-named Defendant:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
       January 5, 2009

**FILED**

JAN 05 2009

NEW YORK
COUNTY CLERK'S OFFICE

WILKOFSKY, FRIEDMAN,
KAREL & CUMMINS

JONATHAN J. WILKOFSKY

Attorneys for Plaintiff
299 Broadway, 17th Floor
New York, New York 10007
(212) 285-0510

To: THE ALLSTATE FIRE AND CASUALTY COMPANY
    c/o Superintendent of Insurance
    25 Beaver Street, 4th Floor
    New York, New York 10004

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

NOTICE:   The nature of this action is breach of contract. The relief sought is monetary. Upon your failure to appear, judgment will be taken against you by default for the sum of Fifty Thousand ($50,000.00) Dollars plus interest from January 6, 2007 plus the costs of this action.

20091/09J101.L1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                               Plaintiffs,

     -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                               Defendant.
-----------------------------------------------------------------------X

**Index No.: 100054/09**

**<u>CERTIFICATION</u>**

Pursuant to the Rules of the Chief Administrator (22 NYCRR) Section 130-1.1-a:

    **-DEMAND FOR COMPLAINT**
    **-DEMAND FOR INDEX NUMBER AND PROOF OF COMPLIANCE**
      **WITH CPLR § 306(a)**
    **-REVOCATION OF CONSENT TO SERVICE BY FACSIMILE**

Dated: Mamaroneck, New York
       November 30, 2009

                    Yours, etc.,

                    MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                    Attorneys for Defendant ALLSTATE FIRE AND
                    CASUALTY COMPANY

                    By:    Sara Luca Salvi, Esq.
                    109 Spencer Place
                    Mamaroneck, New York 10543
                    (914) 899-3100

TO:    WILKOFSKY, FRIEDMAN,
        KAREL & CUMMINS
        Attorney for the Plaintiffs
        299 Broadway,17th Floor
        New York, New York 10007
        (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                               **Index No.: 100054/09**

                    Plaintiffs,

                                **DEMAND FOR**

    -against-                          **COMPLAINT**

ALLSTATE FIRE AND CASUALTY COMPANY,

                    Defendant.
------------------------------------------------------------------------X

     PLEASE TAKE NOTICE, that the defendant, ALLSTATE FIRE AND CASUALTY

COMPANY, demands that a copy of the Complaint and all papers in this action be served upon

the undersigned within twenty (20) days hereof at the offices of MEAD, HECHT, CONKLIN &

GALLAGHER, LLP, at the post office address stated below.

Dated: Mamaroneck, New York
       November 30, 2009

                        Yours, etc.,

                        MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                        Attorneys for Defendant ALLSTATE FIRE AND
                        CASUALTY COMPANY

                        By:    Sara Luca Salvi, Esq.
                        109 Spencer Place
                        Mamaroneck, New York 10543
                        (914) 899-3100

TO:   WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway,17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                           Plaintiffs,

      -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                           Defendant.
------------------------------------------------------------------------X

**Index No.: 100054/09**

**DEMAND FOR INDEX
NUMBER AND PROOF
OF COMPLIANCE WITH
CPLR § 306(a)**

      **PLEASE TAKE NOTICE**, that demand is hereby made that the plaintiffs herein serve

upon the undersigned attorneys for the defendant, ALLSTATE FIRE AND CASUALTY

COMPANY, the Index Number, copy of the original index number receipt of purchase, the date

upon which the Index Number was assigned to the above entitled action as provided for by

§306(a) of the CPLR, affidavit of service upon the defendants, and date when Summons herein

were filed with the Clerk of the Court, within ten (10) days of the date hereof.

Dated: Mamaroneck, New York
       November 30, 2009

                    Yours, etc.,

                    MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                    Attorneys for Defendant ALLSTATE FIRE AND
                    CASUALTY COMPANY

                    By:   Sara Luca Salvi, Esq.
                    109 Spencer Place
                    Mamaroneck, New York 10543
                    (914) 899-3100

TO:    WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway, 17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                         Plaintiffs,

    -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                        Defendant.
------------------------------------------------------------------------X

**Index No.: 100054/09**

**<u>REVOCATION OF
CONSENT TO SERVICE
BY FACSIMILE</u>**

      PLEASE TAKE NOTICE that inclusion upon our letterhead of a number for transmission of documents by electronic process ("FAX") is not be deemed consent to service of litigation papers by such method, any provision of law or statute to the contrary notwithstanding; and

      PLEASE TAKE FURTHER NOTICE that service of litigation papers in this, or any other action upon the undersigned by "FAX" will not be accepted and is not authorized; except upon written or telephone permission given at least twenty-four (24) hours prior to such service.

Dated: Mamaroneck, New York
       November 30, 2009

               Yours, etc.,

               MEAD, HECHT, CONKLIN & GALLAGHER, LLP
               Attorneys for Defendant ALLSTATE FIRE AND
               CASUALTY COMPANY

               By:    Sara Luca Salvi, Esq.
               109 Spencer Place
               Mamaroneck, New York 10543
               (914) 899-3100

TO:    WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway,17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                          Plaintiffs,

     -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                          Defendant.
------------------------------------------------------------------------X

     **Index No.: 100054/09**

     **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK      )
                            ss.:
COUNTY OF WESTCHESTER)

     ALICE A. ANDERSON, being duly sworn, deposes and says:  that deponent is not a party to this action, is over 18 years of age and resides at New Rochelle, New York.

     That on the 30th day of November, 2009, deponent served the within Demand for Complaint, Demand for Index Number and Proof of Compliance with CPLR §306(a), Revocation of Consent to Service by Facsimile and Certification upon:

               WILKOFSKY, FRIEDMAN,
               KAREL & CUMMINS
             Attorneys for the Plaintiffs
             299 Broadway, 17th Floor
             New York, New York 10007

by depositing the same enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

                             *Ⱥ Anderson*
                             ALICE A. ANDERSON

Sworn to before me this
30th day of November, 2009

              Notary Public

**SARA LUCA SALVI**
**Notary Public, State of New York**
**No. 02SA6082576**
**Qualified in Westchester County**
**Commission Expires 10/28/10**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                          Plaintiff,

       -against-

ALLSTATE FIRE AND CASUALTY COMPANY

                       Defendant.
----------------------------------------x

Index No.:

**09100054**

The basis of the
venue is CPLR §509

**SUMMONS WITH NOTICE**

To the above-named Defendant:

      YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve notice of appearance, on the Plaintiff's attorneys within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded herein.

Dated: New York, New York
       January 5, 2009

**FILED**

JAN 05 2009

NEW YORK
COUNTY CLERK'S OFFICE

WILKOFSKY, FRIEDMAN,
KAREL & CUMMINS

JONATHAN J. WILKOFSKY

Attorneys for Plaintiff
299 Broadway, 17th Floor
New York, New York 10007
(212) 285-0510

To: THE ALLSTATE FIRE AND CASUALTY COMPANY
    c/o Superintendent of Insurance
    25 Beaver Street, 4th Floor
    New York, New York 10004

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

NOTICE:    The nature of this action is breach of contract. The relief sought is monetary. Upon your failure to appear, judgment will be taken against you by default for the sum of Fifty Thousand ($50,000.00) Dollars plus interest from January 6, 2007 plus the costs of this action.

20091/09J101.L1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

          **Index No.: 100054/09**

      Plaintiffs,

          <u>**CERTIFICATION**</u>

  -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

      Defendant.
------------------------------------------------------------------------X

   Pursuant to the Rules of the Chief Administrator (22 NYCRR) Section 130-1.1-a:

    **-DEMAND FOR COMPLAINT**
    **-DEMAND FOR INDEX NUMBER AND PROOF OF COMPLIANCE**
     **WITH CPLR § 306(a)**
    **-REVOCATION OF CONSENT TO SERVICE BY FACSIMILE**

Dated: Mamaroneck, New York
   November 30, 2009

       Yours, etc.,

       MEAD, HECHT, CONKLIN & GALLAGHER, LLP
       Attorneys for Defendant ALLSTATE FIRE AND
       CASUALTY COMPANY

       By:  Sara Luca Salvi, Esq.
       109 Spencer Place
       Mamaroneck, New York 10543
       (914) 899-3100

TO:  WILKOFSKY, FRIEDMAN,
    KAREL & CUMMINS
    Attorney for the Plaintiffs
    299 Broadway, 17th Floor
    New York, New York 10007
    (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                         Plaintiffs,

      -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                         Defendant.
------------------------------------------------------------------X

**Index No.: 100054/09**

**DEMAND FOR**
**COMPLAINT**

      PLEASE TAKE NOTICE, that the defendant, ALLSTATE FIRE AND CASUALTY

COMPANY, demands that a copy of the Complaint and all papers in this action be served upon

the undersigned within twenty (20) days hereof at the offices of MEAD, HECHT, CONKLIN &

GALLAGHER, LLP, at the post office address stated below.

Dated: Mamaroneck, New York
       November 30, 2009

                     Yours, etc.,

                     MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                     Attorneys for Defendant ALLSTATE FIRE AND
                     CASUALTY COMPANY

                     By:    Sara Luca Salvi, Esq.
                     109 Spencer Place
                     Mamaroneck, New York 10543
                     (914) 899-3100

TO:   WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway, 17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                       Plaintiffs,

        -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                       Defendant.
-------------------------------------------------------------------------X

**Index No.: 100054/09**

**<u>DEMAND FOR INDEX
NUMBER AND PROOF
OF COMPLIANCE WITH
CPLR § 306(a)</u>**

     **PLEASE TAKE NOTICE,** that demand is hereby made that the plaintiffs herein serve

upon the undersigned attorneys for the defendant, ALLSTATE FIRE AND CASUALTY

COMPANY, the Index Number, copy of the original index number receipt of purchase, the date

upon which the Index Number was assigned to the above entitled action as provided for by

§306(a) of the CPLR, affidavit of service upon the defendants, and date when Summons herein

were filed with the Clerk of the Court, within ten (10) days of the date hereof.

Dated: Mamaroneck, New York
       November 30, 2009

                  Yours, etc.,

                  MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                  Attorneys for Defendant ALLSTATE FIRE AND
                  CASUALTY COMPANY

                  By:   Sara Luca Salvi, Esq.
                  109 Spencer Place
                  Mamaroneck, New York 10543
                  (914) 899-3100

TO:    WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway, 17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                                **Index No.: 100054/09**

                    Plaintiffs,

                                **REVOCATION OF**
     -against-                        **CONSENT TO SERVICE**
                                **BY FACSIMILE**
ALLSTATE FIRE AND CASUALTY COMPANY,

                    Defendant.
------------------------------------------------------------------------X

      PLEASE TAKE NOTICE that inclusion upon our letterhead of a number for transmission of documents by electronic process ("FAX") is not be deemed consent to service of litigation papers by such method, any provision of law or statute to the contrary notwithstanding; and

      PLEASE TAKE FURTHER NOTICE that service of litigation papers in this, or any other action upon the undersigned by "FAX" will not be accepted and is not authorized; except upon written or telephone permission given at least twenty-four (24) hours prior to such service.

Dated: Mamaroneck, New York
       November 30, 2009

                     Yours, etc.,

                     MEAD, HECHT, CONKLIN & GALLAGHER, LLP
                     Attorneys for Defendant ALLSTATE FIRE AND
                     CASUALTY COMPANY

                     By:   Sara Luca Salvi, Esq.
                     109 Spencer Place
                     Mamaroneck, New York 10543
                     (914) 899-3100

TO:   WILKOFSKY, FRIEDMAN,
       KAREL & CUMMINS
       Attorney for the Plaintiffs
       299 Broadway,17th Floor
       New York, New York 10007
       (212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------X
THOMAS D. WOODHAMS and CHARLENE CONNORS,

                               Plaintiffs,

      -against-

ALLSTATE FIRE AND CASUALTY COMPANY,

                               Defendant.
-----------------------------------------------------------------------X

**Index No.: 100054/09**

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK      )
                          ss.:
COUNTY OF WESTCHESTER)

      ALICE A. ANDERSON, being duly sworn, deposes and says:  that deponent is not a party to this action, is over 18 years of age and resides at New Rochelle, New York.

      That on the 30th day of November, 2009, deponent served the within Demand for Complaint, Demand for Index Number and Proof of Compliance with CPLR §306(a), Revocation of Consent to Service by Facsimile and Certification upon:

                WILKOFSKY, FRIEDMAN,
                KAREL & CUMMINS
                Attorneys for the Plaintiffs
                299 Broadway, 17th Floor
                New York, New York 10007

by depositing the same enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

                                        _ALICE A. ANDERSON_
                                        ALICE A. ANDERSON

Sworn to before me this
30th day of November, 2009

                Notary Public

SARA LUCA SALVI
Notary Public, State of New York
No. 02SA6082576
Qualified in Westchester County
Commission Expires 10/28/10



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------x     Index No.:100054/09
THOMAS D. WOODHAMS and CHARLENE CONNORS,
individually and on Behalf of all
others similarly situated,

                              Plaintiffs,

          -against-                              **SUPPLEMENTAL SUMMONS**

ALLSTATE FIRE AND CASUALTY COMPANY,
ALLSTATE INSURANCE COMPANY, ALLSTATE
INDEMNITY COMPANY, and ALLSTATE
PROPERTY & CASUALTY INSURANCE COMPANY,

                              Defendants.
----------------------------------------x
To the above-named Defendants:

     YOU ARE HEREBY SUMMONED and required to serve upon
Plaintiffs' attorney, at their address stated below, an answer
to the attached complaint.  If this summons was personally
delivered upon you in the State of New York, the answer must be
served within twenty days after such service of this summons,
excluding the date of service.  If the summons was not
personally delivered to you within the State of New York, the
answer must be served within thirty days after service of the
summons is complete as provided by law.  If you do not serve an
answer to the attached complaint within the applicable time
limitation stated above, a judgment may be entered against you,
by default, for the relief demanded in the complaint, without
further notice to you.
The action will be heard in the Supreme Court of the State of
New York , in and for the County of New York.  This action is
brought in the County of New York because it is the county
designated by Plaintiffs.

Dated: New York, New York
          December 18, 2009

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

                         WILKOFSKY, FRIEDMAN,
                            KAREL & CUMMINS

                    By: _____
                         JONATHAN J. WILKOFSKY

                         Attorneys for Plaintiffs
                         299 Broadway, 17th Floor
                         New York, New York 10007
                         (212) 285-0510

- 1

TO:   MEAD, HECHT, CONKLIN & GALLAGHER, LLP.
      Attorneys for Defendants ALLSTATE FIRE
      AND CASUALTY COMPANY
      109 Spencer Place
      Mamaroneck, New York 10543
      Attn.: Sara Luca Salvi, Esq.
      (914)899-3100


      ALLSTATE INSURANCE COMPANY
      c/o Superintendent of Insurance
      25 Beaver Street, 4th Floor
      New York, New York 10004


      ALLSTATE INDEMNITY COMPANY
      c/o Superintendent of Insurance
      25 Beaver Street, 4th Floor
      New York, New York 10004


      ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY
      c/o Superintendent of Insurance
      25 Beaver Street, 4th Floor
      New York, New York 10004


20092/09J152.L1

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

THOMAS WOODHAMS and CHARLENE      :
CONNORS, individually and on Behalf of   :
all others similarly situated,            :

               Plaintiffs,   :

      -against-             :

ALLSTATE FIRE AND CASUALTY         :
COMPANY, ALLSTATE INSURANCE         :
COMPANY,  ALLSTATE INDEMNITY        :
COMPANY, and ALLSTATE PROPERTY     :
& CASUALTY INSURANCE COMPANY,     :

              Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Index No.:  100054/09

**CLASS ACTION COMPLAINT**

     Plaintiffs Thomas Woodhams and Charlene Connors, individually and on behalf of all

others similarly situated, for their Class action complaint (the "Complaint") allege the

following upon personal knowledge of their own acts and circumstances and upon information

and belief as to all other matters based upon the investigation of Plaintiffs' attorneys.

**SUMMARY OF ACTION**

     1.     This is a Class action on behalf of a Class of all persons/entities who were/are

insured by Allstate Fire and Casualty Company, Allstate Insurance Company and/or Allstate

Indemnity Company, and/or Allstate Property & Casualty Insurance Company (collectively

"Allstate") under policies of property insurance issued on properties located in the state of New

York which include replacement cost coverage under either the standard replacement cost

coverage terms of the policies offered by Allstate and/or under Allstate's Building Structure

Reimbursement Extended Limits Endorsement, *inter alia*, insuring against all risks of loss

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

including fire[1] from December 20, 2003 to date ("the "Class Period"). The Class seeks to recover the amount of premiums paid by Class members for coverage that Allstate never intended to make available to its insureds and in fact Allstate's practice has been to deny the replacement cost coverage benefit and/or extended limits benefits (as expressly provided by policy language and New York State Insurance Law) to its insureds who have suffered covered losses. Class members seek to recover in this action, *inter alia*, a refund of that portion of the premiums they paid for the replacement cost coverage and/or extended limits benefits under their policies for which Allstate charged them a premium knowing that it (Allstate) never intended to provide such coverage.

2.      The Class includes a Subclass consisting of all Class members who made covered property damage claims to Allstate but to whom Allstate refused to make payment for full replacement value, specifically the Holdback a/k/a "recoverable depreciation," of the damaged property because the insured property was not completely repaired or replaced within a period of 180 days from a date arbitrarily set by Allstate, that being the date of payment of the actual cash value (the "Subclass"). The Class also includes a Subclass who paid premiums for extended limits benefits over and above policy limits but to whom Allstate refused to make payment for extended limits because the insured property was not completely repaired or replaced within a period of 180 days from a date arbitrarily set by Allstate.

3.      The Allstate claims handling and adjustment practices and Allstate's policy interpretation which are the subject of this lawsuit are uniform throughout the United States and within New York State. Allstate's policy language with respect to its replacement cost coverage obligations and Allstate's interpretation thereof, violates the insurance law of the

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

---

[1] Except as may be specifically excluded or limited.

State of New York which mandates the use of certain minimum terms and conditions in any

property damage policies insuring against the peril of fire and prohibits Allstate from offering

coverage "less favorable" than provided under statutorily mandated coverage terms contained

in New York's Standard Fire Insurance Policy (commonly referred to in the insurance industry

as the "165 lines").  (Insurance Law Section 3404).  As a matter of practice, during the Class

Period, Allstate has invariably refused to pay its insureds the benefits of the replacement cost

coverage and/or extended limits for covered losses to covered property when the insured does

not repair or replace the damaged covered property within 180 days of the date when Allstate

sends the insured a check in payment only for the Actual Cash Value of the damaged property

notwithstanding that such amount is substantially below the replacement cost coverage paid for

by the insured.  Allstate has invariably asserted a similar position when claim is made for

extended limits benefits.

      4.     Allstate has written and interpreted its homeowner property policies to require

the insured to complete all repairs and replacement of damaged property within an arbitrary

180 day period set by Allstate as a condition precedent to obtaining the benefits of (1) the

replacement value on both building and contents claims coverage subjecting the insureds to the

loss of recoverable depreciation (for which the insured has paid an additional premium); and/or

(2) the extended limits endorsement offered through the Building Structure Reimbursement

Extended Limits Endorsement (AP 698) which provides 25% of additional coverage on top of

the policy limit if the repair or replacement costs exceed policy limits.

      5.     Accordingly, Allstate's homeowner's property damage insurance policies,

Allstate's interpretation thereof, and adjustment of losses under the property damage policies it

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

has issued in New York State are in violation of New York State Insurance Law and the law of other states.

6.      The Subclass members seek to recover (in addition to any amounts they are owed as Class Members for those claims on policies where no covered losses occurred) the amount of the repair and replacement cost Holdback which Allstate has refused to pay on both building and contents claims as well as the amounts owed based upon the extended limits endorsements and all other damages flowing therefrom as more fully set forth herein.

## JURISDICTION AND VENUE

7.      Venue is proper in this County because the acts, events, and conduct complained of herein occurred in substantial part in this County.  Defendants have substantial operations and do significant business within this County and are subject to personal jurisdiction in this County.

8.      Venue in this action properly lies in this County based upon CPLR §509.

9.      This Court has jurisdiction over Allstate pursuant to subsections 1 and 2 of CPLR §302(a) because Defendant (i) transacts business within the state and/or contracts elsewhere to provide services within the state; and (ii) committed the violations complained of herein within the state.

10.     This suit is brought to recover damages and other relief, including the costs of suit as well as reasonable attorney fees and expert fees, for the damages sustained by Plaintiffs and the putative Class as a result of Defendants' willful acts and omissions. .

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

4

## THE PARTIES

11.     Plaintiff Thomas Woodhams and Charlene Connors (the"Woodhams") were and are insureds of Allstate who have been paying premiums for replacement coverage that Allstate never intended to provide to them in the event of a covered loss and who have not been paid full replacement and repair cost for their insured loss as provided by the policy of insurance they purchased from Allstate and as required by New York State Law.

12.     Defendant Allstate Insurance Company ("Allstate Parent") through its subsidiaries named herein as co-defendants sells property insurance to insureds in the State of New York for properties located in New York State, is an Illinois corporation with its principal executive offices located at 2775 Sanders Road, Northbrook, Illinois 60062.

13.     Defendants Allstate Fire and Casualty Company, Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Insurance Company are wholly owned subsidiaries of Allstate's Parent which market and sell the policies of insurance purchased by Class members as alleged herein.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs sue on their own behalf and on behalf of the Class and Subclass previously defined herein at paragraph 2.

15.     The persons in the Class and Subclass are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, Plaintiffs are informed and believes that there are thousands of Class Members and Subclass members.

The Class

16.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including:

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

(a)     whether the express terms and conditions in the policies sold by Allstate during the Class Period for property damage coverage violate New York Insurance Law.

(b)     whether the express terms and conditions in the policies sold by Allstate during the Class Period for property damage coverage violate the expressed wishes and demands of the New York State Insurance  Department who is charged with responsibility for approving such policies.

(c)     whether Allstate replacement cost coverage and/or extended policy limits terms are less favorable to insureds than the Standard Fire Insurance Policy mandated by New York Insurance Law;

(d)     whether Allstate's refusal to pay insureds the full benefits of the replacement cost coverage and/or the extended limits under the policies violates New York Insurance Law;

(e)     whether Allstate's practices for the interpretation of its policy terms and/or Allstate's adjustment loss practices violate New York Insurance Law;

(f)     whether Allstate's advertising and marketing practices for its homeowner's property damage policies in the State of New York are materially false and misleading;

(g)     whether Allstate has illegally charged Class Members for replacement cost coverage and extended benefits that it has no intention of allowing its insureds to collect unless the insured has repaired and/or replaced its damaged property within 180 days of the date Allstate elects to pay the insured the substantially lower coverage amount of the Actual Cash Value of the damaged property;

WILKOFSKY,
FRIEDMAN,
KAREL & COMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

(h)     whether Allstate's practices constitute a fraud insofar as Allstate markets and sells policies in which it promises to afford coverage despite the fact that Allstate knows it will not allow the policyholder to realize the benefits of the coverage;

(i)     whether Plaintiffs and the other Class members have been damaged by Defendant's conduct; and

(j)     the amount of damages suffered by Plaintiffs and the Class.

<u>The Subclass</u>

17.     There are questions of law and fact common to the Subclass that predominate over any questions affecting only individual members, including:

(a)     whether the express terms and conditions in the policies sold by Allstate during the Class Period for property damage coverage violate New York Insurance Law.

(b)     whether the express terms and conditions in the policies sold by Allstate during the Class Period for property damage coverage violate the expressed wishes and demands of the New York State Insurance Department who is charged with responsibility for approving such policies.

(c)     whether Allstate replacement cost coverage policy terms and/or extended limits under the policies issued by Allstate to Subclass members are less favorable to insureds than the Standard Fire Insurance Policy mandated by New York Insurance Law;

(d)     whether Allstate's refusal to pay insureds the full benefits of the replacement cost coverage and/or extended limits under the policies violates New York Insurance Law;

(e)     whether Allstate's practices for the interpretation of its policy terms and/or Allstate's adjustment practices violate New York Insurance Law.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

7

(f)     whether Allstate has breached and is anticipatorily breaching its polices of insurance by refusing to afford customers replacement cost coverage and/or extended limits paid for by insureds when they suffer covered losses to covered property;

(g)     whether Plaintiffs and the other Subclass members have been damaged by Defendants' conduct; and

(h)     the amount of damages suffered by Plaintiffs and the Subclass.

18.     The claims of the plaintiffs are typical of the claims of the Class and the Subclass because Plaintiffs' claims arise out of the same course of conduct and are based on the same legal theories as the claims of the Class and the Subclass

19.     The representative plaintiffs will fairly and adequately protect the interests of the Class.

20.     A Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## SUBSTANTIVE ALLEGATIONS

**A.     The Practices Engaged In By Allstate As Alleged Herein Were Developed On The Advice of McKinsey & Co. To Allow Allstate To Wring Windfall Profits From Insureds By Denying To Insureds The Full Benefits Of Coverage Sold to Class Members And Insureds Throughout The United States**

21.     Sometime before September 1, 1992, Allstate's senior executives approached McKinsey & Company ("McKinsey"), an international business consulting firm, to consult about ways to improve its earnings and profits.  McKinsey and Allstate focused on claims-paying.  McKinsey and Allstate designed a new claim system, called "Claims Core Process Redesign", or "CCPR."  McKinsey told Allstate that CCPR would be designed to treat paying claims like a "zero-sum economic game.  Allstate gains – others must lose."  CCPR and other

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

8

claims handling protocols at issue in this case were implemented and are applied uniformly by Allstate to all it's insureds.

22.     At the same time, McKinsey recommended that Allstate redefine its coverage and loss adjustment practices to restrict coverage and pay less money on legitimate claims.  In a slide presentation disseminated within Allstate, Allstate admits that one of its strategies for "winning the economic game" is "—Redefinition of claims benefits and payment approach." In McKinsey's own words, "Current processes are incenting and reinforcing behavior that <u>does not reward shareholders."</u>

23.     Allstate's new practices for handling claims made by its own insureds are exactly the same, in concept, as those for handling claims of third-parties who sue Allstate's insureds.  In other words, Allstate treats its own policyholders the same as it treats non-policyholders who sue Allstate's insureds.

24.     McKinsey applied its new business model to <u>all</u> claims of all Allstate insureds who made claims for property damage in all states.

25.     In a July 1995 McKinsey slide entitled "Allstate Personal Lines – CCPR Benefit Projections," McKinsey projected that applying CCPR's model to homeowners' claims (such as claims of the plaintiffs and Class members) would reduce Allstate's homeowner claim payments by as much as $400 million between 1996 and 1999.

26.     The contrast between Allstate's reported financial results pre-implementation of McKinsey recommendations compared to post-implementation demonstrates Allstate's use of these methods and their effectiveness in driving profits higher at the expense of insureds. Allstate paid out 73% of premium in benefits from 1987 to 1996 when the overall industry

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

average was 70% of the premium dollar.  Yet, during this same period, Allstate's net profits were at least as good as, if not better than, the industry average.

27.     After Allstate had ramped up its implementation in 1996, Allstate's implementation of McKinsey's recommendations yielded immediate windfall profits for Allstate.  Its premium payout ratio dropped to a startlingly low 59% from 1997 to 2005, a decline of 19.2% of the loss payout ratio.

28.     Not surprisingly, in 2006, Allstate posted a $5 billion post-tax operating and investment profit.  That was a record for Allstate as Allstate's insurance companies paid out a record-low 47.6¢ per premium dollar for claims during 2006.

**B.     Allstate Defied And Ignored The Recommendations Of The New York State Department Of Insurance And Inserted Unapproved Language In Its Form Of Property Damage Policies Sold In New York During The Class Period**

29.     In the 1990s, Allstate began to introduce changes to its property damage policies in the State of New York and elsewhere.  Upon information and belief, based on investigation of counsel, the changes in the language of Allstate's property insurance coverage in New York was implemented as part of Allstate's overhaul of its business model as advised by McKinsey & Co. as described above.

30.     Originally, Allstate's policy terms for property damage coverage in New York allowed the insured to obtain the benefits of the replacement cost coverage under the policy by simply making claim therefore within 180 days of the date of loss.  The pertinent policy language in the Allstate policies (pre-McKinsey) provided as follows:

> If you decide not to repair or replace the damage property, settlement will be on an actual cash value basis, not to exceed the limit of liability applicable to the building.  You may make claim within 180 days after the date of the loss for any additional

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

payment on a replacement cost basis if you repair the damaged property.

Under this provision the insureds needed only to "make claim" for the additional replacement cost coverage (or the depreciation "Holdback") within 180 days of the date of loss. The insured was not obligated to have actually completed (or started) the work by an arbitrary deadline as a condition of receiving the replacement cost coverage benefits or Holdback.

31. In the 1990s, Allstate devised revised policy terms for policies issued in New York and other states, (which plaintiffs believe are consistent with policies in use by Defendants nationwide) which Allstate has asserted allow it to restrict the replacement cost and/or extended limits coverage and to adjust losses so as to withhold monies due insureds and impose conditions on insureds for payment of replacement cost proceeds (or the Holdback) and/or extended limits coverage on covered claims.

32. In the 1990s, Allstate representatives approached the New York State Insurance Department to obtain approval of new language governing the replacement cost coverage and the Holdback under the property damage policies sold in New York State. The new policy language proposed to the New York State Insurance Department reads as follows:

> b) Actual Cash Value. This means there may be a deduction for depreciation.
>
> If you do not to repair or replace the damage building structure, payment will be on an actual cash value basis, not to exceed the limit of liability shown on the declarations page for Coverage A – Dwelling Protection. You may make claim for additional payment as described in paragraph (c) [of the Policy] and paragraph (d) [of the Policy], <u>if you repair or replace the damaged, destroyed, or stolen covered property within 180 days of the actual cash value payment.</u> (Emphasis added)

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY·
NEW YORK, NY
10007
(212) 285-0510

33.     According to Confidential Witness No. 1 (an official within the New York State Department of Insurance, who was an Insurance Department employee at the relevant time), the Insurance Department rejected the language proposed by Allstate.  (See Exhibit "A")

34.     Notwithstanding that rejection, Allstate proceeded to market and issue property damage policies in New York State that contained the new policy language.  Accordingly, since that date Allstate has been issuing policies within the state of New York that have not been properly approved, as required, under New York State Insurance Law by the Insurance Department of the State of New York.

35.     In marketing its property damage policies in the state of New York, Allstate intentionally obscured and concealed the restrictions it imposed upon the insured to obtain benefits of  the replacement cost coverage and/or Holdback proceeds and/or extended limits benefits in the event of a covered loss to covered property.  Attached hereto as Exhibit "B" is a copy of internet and print marketing materials used by Allstate during the relevant period which describes the replacement cost basic coverage and extended limits replacement cost coverage very prominently but misleadingly omits any references to the coverage restrictions imposed by Allstate as a condition of the insured's realizing those benefits, *i.e.* the Allstate –imposed (but New York State Insurance Department-rejected) requirement that the insured complete repairs and replacement of damaged property within 180 days of an arbitrary date selected by Allstate to pay the Actual Cash Value of a covered loss for covered property.

36.     The new policy language (described in paragraph 32 above) has been interpreted by Allstate to require that the Plaintiffs and other Class members COMPLETE all repairs and/or replacement of all damaged property within 180 days of Allstate's payment of the Actual Cash Value loss, as opposed to the prior language which required that Plaintiffs needed

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

only to make a claim for the Replacement Cost coverage within the 180 days from the date of loss and did not even require the insured to begin repairs in order to enable subsequent payment of the Holdback and/or Replacement Cost coverage. Allstate's refusal to pay replacement cost benefits or the Holdback and/or extended limits benefits until and unless the repairs and replacement were COMPLETED within 180 days is itself a breach of the new language even if the new language had been approved by the Insurance Department.

37. Upon information and belief, after Allstate changed (without Insurance Department approval) the terms of the property damage policies in New York in the 1990s, it began to impose the new condition upon insureds which required the insureds to complete the repair or replacement of the damaged property within 180 days of the actual cash value payment as a condition to receiving the full replacement value under the policy.

38. Allstate has imposed this extra-contractual condition intentionally and uniformly to justify coverage restrictions and under- payment of claims as part of its implementation of McKinsey's recommendation to Allstate to "… redefine claims benefits and payment approach".

39. Allstate knows it is nearly impossible for Plaintiffs' and other Class members to comply with Allstate's interpretation of its coverage and complete repairs within 180 days of the date arbitrarily set by Allstate. Insureds are often at the mercy of the weather, building departments, contractors, architects and inspectors for municipalities, mortgagees and the normal time for major reconstruction, all of which are beyond the control of the Plaintiffs and Class members. On large losses, due to the size and scope of the damage and necessary demolition and repairs or construction, replacement is physically impossible to start and complete within 180 days of the date that Allstate picks to make the actual cash value payments

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

that the insureds desperately need to hire an architect to draw and file plans, obtain permits and for a contractor to demolish damaged areas and start on the work.

40.     As part of its McKinsey-inspired effort to "redefine claims benefits and payment approach," Allstate also applied the same impermissible 180 day completion condition on Class members who were induced to purchase, at a separate charge, an extended limits endorsement. Such coverage, by its terms, affords the insured 25% of additional coverage above stated policy limits if the cost to repair or replace exceeds policy limits.  With respect to this coverage supplement, Allstate has also written and interpreted its policy language to require complete repair or replacement within 180 days of a date arbitrarily set by Allstate.

41.     Since it is often impossible for insureds to repair or replace seriously damaged real property within 180 days of receiving the Actual Cash Value payment, insureds often are not allowed to collect on these benefits afforded in Allstate's policies.  Allstate's interpretation of its policy language and its practices with respect to the adjustment and payment of losses has allowed Defendants to retain insurance coverage proceeds under policy coverages purchased by insureds.

**C.     Allstate's Policy Form That Included The Unapproved 180 Day Limit Is In Contravention Of New York Insurance Law Section 3404, "Fire Insurance Contracts; Standard Policy Provisions; Permissible Variations" And Also Violates The Contractual Undertaking In Allstate's Policies That The Policy Terms And Condition Are Automatically Conformed To To State Laws As Applicable**

42.     Allstate uses standard forms throughout New York State for insuring dwellings and other structures against loss by fire and other perils and did so also at all relevant times during the Class Period.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

14

43.     While Allstate purports to be interpreting the pertinent policy language according to its written terms and conditions, that interpretation and the policy language itself violate New York Insurance Law Section 3404 and similar laws of other states which prohibit the sale of policies if the policies' terms are less favorable to the insured than the terms of the "Standard Fire Insurance Policy of the state of New York" as set forth (in New York) in Article 34, Section 3404, Chapter 28 McKinney's Consolidated Law of New York Annotated.

44.     New York Insurance Law Section 3404, "Contracts-Property And Casualty, Fire Insurance Contracts; Standard Policy Provisions; Permissible Variations," provides, in pertinent part as follows:

> (a)     The printed form of a policy of fire insurance, as set forth in subsection (e) hereof, shall be known and designated as the "standard fire insurance policy of the state of New York."

> (b)(1)   No policy or contract of fire insurance shall be made, issued or delivered by any insurer or by any agent or representative thereof, on any property in this state, unless it shall conform as to all provisions, stipulations, agreements and conditions with such form of policy, except policies subject to the provisions of section three thousand one hundred two of this chapter which shall be required to comply with the provisions of paragraph one of subsection (f) of this section.

>        *            *            *

> (c)     The form of the standard fire insurance policy of the State of New York (with permission to substitute for the word "company," a more accurate descriptive term for the type of insurer) shall be as follows:

> "In consideration of the provisions and Stipulations herein or added hereto and of _____ Dollars premiums this company for the term from the _____ day of _____, 19___ to the _____ day of _____, 19__, does insure _____ and legal representatives TO THE LESSER AMOUNT OF EITHER:

> 1)  THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF THE LOSS, OR

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

2)  THE AMOUNT OF WHICH IT WOULD COST TO
    REPAIR OR REPLACE THE PROPERTY WITH
    MATERIAL OF LIKE KINDAND QUALITY **WITHIN A**
    **REASONABLE TIME AFTER SUCH LOSS,** WITHOUT
    ALLOWANCE FOR ANY INCREASED COST OF
    REPAIR OR RECONSTRUCTION BY REASON OF ANY
    ORDINANCE OR LAW REGULATING CONSTRUCTION
    OR REPAIR, AND WITHOUT COMPENSATION FOR
    LOSS RESULTING FROM INTERRUPTION OF
    BUSINESS OR MANUFACTURE, OR **(Bold emphasis**
    **added)**

3)  TO AN AMOUNT NOT EXCEEDING _____
    DOLLARS, BUT IN ANY EVENT FOR NO MORE THAN
    THE INTEREST OF THE INSURED, AGAINST ALL
    DIRECT LOSS BY FIRE, LIGHTNING AND BY
    REMOVAL FROM PREMISES ENDANGERED BY THE
    PERILS INSURED AGAINST IN THIS POLICY, EXCEPT
    AS HEREINAFTER PROVIDED, to the property described
    hereinafter while located or contained as described in this
    policy, or pro rata for five days at each proper place to which
    any of the property shall necessarily be removed for
    preservation from the perils insured against in this policy, but
    not elsewhere.


              *                    *                    *


(f)(1)   Subject to the approval of the superintendent, a policy
which insures solely against the peril of fire or which insures
against the perils of fire in combination with other kinds of
insurance either for divisible or indivisible premium need not
comply with the provision of subsection (e) of this section
provided:

        (A)    The policy contains, with respect to the
               perils of fire, terms and provisions no less
               favorable to the insured than those
               contained in the standard fire policy;

              *                    *                    *

It shall be optional with this Company to take all, or any part, of
the property at the agreed or appraised value, and also to repair,

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

rebuild or <u>replace the property destroyed or damaged with</u> <u>other of like kind and quality within a reasonable time</u>, on giving notice of its intention so to do within thirty days after the receipt of the proof of loss herein required. (**Bold emphasis added**)

      \*                \*                \*

**When Loss Payable:**
**The amount of loss for which the Company may be liable shall be payable sixty days after proof of loss , as herein provided, is received by this Company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided. (Bold emphasis added)**

      \*                \*                \*

45.    The coverage provided by the foregoing terms of Insurance Law §3404 and the 165 lines is more extensive and favorable to the insured that the coverage provided by Allstate's standard property damage coverage forms.  Allstate's policy terms and its practices with respect to Allstate's policy terms and conditions and its interpretation thereof and adjustment and loss paying practices for policies of insurance issued in the state of New York thus afford to insureds "less favorable coverage" than offered under New York's Standard Fire Insurance Policy and thus violate New York Insurance Law which requires all such coverage in New York to be offered to afford no less favorable coverage than offered under the Standard Fire Insurance Policy.

46.    One of Allstate's most common standard forms of insurance coverage for property damage coverage is the "Allstate Deluxe Policy AP 316."

47.    Under the terms of the Deluxe Policy, Allstate covers "dwellings" and "attached structures", *inter alia*, ("Covered Property") against "sudden and accidental direct physical loss" to the Covered Property with specified exceptions.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

17

48.     The Deluxe Policy also sets forth the terms of "How We Pay For A Loss":

b)          Actual Cash Value
If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the limit of liability shown on the Policy Declarations for the coverage that applies to the damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You may make claim for additional payment as described in paragraph c, and paragraph d if applicable, if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment. (Bold emphasis added)**

c)          Building Structure Reimbursement
Under Coverage A – Dwelling Protection and Coverage B – Other Structures Protections, **we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damages, destroyed or stolen covered property within 180 days of the actual cash value payment. This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminates, toxins or pollutants as required to complete repair or replacement of that part of a building structure damaged by a covered loss. (Bold emphasis added)**

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)      the replacement cost of the part(s) of the building structure(s) for like kind and quality construction, for similar use, on the same premises;
2)      the amount actually and necessarily spent to repair or replace the damages building structure(s) with like kind and quality construction, for similar use, on the same premises; or
3)      the limit of liability applicable to the building structure as shown on the Policy Declarations for Coverage B – Other Structures Protection, regardless of the number of building structures and structures other than building structures involved in the loss.

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

covered loss to building structures and the smallest of 1), 2) or 3) above.

Payment under a, b, and c above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating the construction, reconstruction, maintenance, repair, relocation or demolition of building structures or other structures.

d)     Personal Property Reimbursement -When The Policy Declarations shows that the Personal Property Reimbursement provision applies under Coverage C – Personal Property Protection, **we will make additional payment to reimburse you for cost in excess of actual cash value if you repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 180 days of the actual cash value payment. (Bold emphasis added)**

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:
1)     the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality.
2)     the cost of repair or restoration.
3)     the limit of liability shown on the Policy Declarations for Coverage C – Personal Property Protection, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

49.     The Deluxe Policy also provides "Our Settlement Of Loss":

Our Settlement Of Loss

We will settle any covered loss with you unless another payee is named in the policy.  We will settle within 60 days after the amount of loss is finally determined.  This amount may be determined by an agreement between you and us, an appraisal award, or a court judgment.

50.     Allstate's Deluxe Policy includes Building Structure Reimbursement coverage which purportedly provides the insured with coverage up to the amount it costs to repair or

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

replace the damaged insured property over and above the stated policy limits. This coverage assures the insured that he/she will be provided the full funds necessary to repair and replace damaged property regardless of policy limit, up to an additional 25 percent of that limit. Such coverage is more expensive to the insured than the coverage without this benefit. Such coverage is also subject to Allstate's 180 day language.

51.     The Deluxe Policy and Allstate's basic policy forms also provides for "Conformity to State Statutes" as follows:

> Conformity to State Statutes
>
> When the policy provisions conflict with the statutes of the state in which the residence premise is located, the provisions are amended to conform to such statutes.

52.     In the 165 lines there is no language which requires completion of the repairs within 180 days and, in fact, it mandates and measures payment within "a reasonable time after such loss" and is "payable sixty days after proof of loss, as herein provided, is received by this company and ascertainment of the loss is made either by agreement between the insured and this Company expressed in writing or by the filing with this Company of an award as herein provided." Allstate's inclusion of such policy language renders the policy's terms and conditions less favorable to the insured than the 165 lines and therefore violates the "no less favorable" prohibition of the Insurance Law and violates its own policy language which falsely assures the Class members that Allstate's coverage will be conformed to applicable state law even if such law requires broader coverage than the language of the policy or of Allstate's own internal loss adjustment and policy interpretation practices. Moreover, Allstate's loss adjustment practices and its pattern and practice of adjusting losses to require COMPLETE repair and replacement of all covered damaged property before the insured can receive the

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

benefits of the replacement cost coverage and/or extended limits benefits renders the coverage afforded by Allstate less favorable to the insured than the 165 lines.

53.     Allstate's refusal to pay replacement coverage benefits and/or the extended limits benefits constitutes a breach of the policy terms and conditions.

54.     Allstate's use of the 180 day policy terms was never approved by the New York State Insurance Department and accordingly Allstate's sale and marketing of policies including those terms is in violation of New York law. Accordingly, all of Allstate's property damage polices in New York can and should have been marketed only with the original 180 day language described at paragraph 30.

55.     Other language changes included by Allstate at the same time the 180 day language was added has already been judicially determined as violating Insurance Law 3404.

**D.     In 2009, Allstate Once Again Tried And Failed to Get The New York Insurance Department To Approve Policy Language That Restricted Coverage In Contravention Of The 165 Lines Statutory Requirements**

56.     In 2009, upon the New York Insurance Department's realization of such unauthorized use of said language, Allstate was told that its 180 day language was unacceptable. Allstate representatives tried to get Insurance Department approval to extend the 180 day repair/replace completion limit to 365 days in order to deflect the onslaught of consumer complaints over its policy language and loss adjustment practices in New York.

57.     As reflected in protracted correspondence between Allstate and the Insurance Department attached hereto as Exhibit "C," the Insurance Department denied Allstate's request for approval.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

58.     Moreover, the Insurance Department challenged the use by Allstate of any limitations period for completion of repair of replacement as a condition of an insureds obtaining the repair or replacement and/or Holdback coverage afforded under the polices.

59.     In explicit correspondence, the Insurance Department castigated Allstate for unreasonably restricting the coverage and asked Allstate repeatedly to explain the basis for its policy language requiring the insured to COMPLETE repair or replacement before being allowed to collect additional policy proceeds provided under the policy, pointing out that Allstate is the only insurer in the market that uses said unauthorized language.

60.     Rather than explain its rationale or provide evidence of any prior Department approval of the 180 day language, Allstate withdrew its request for a policy language change. (See Exhibit "C" annexed hereto). But Allstate has not withdrawn its 180 day repair/replace language form the policies it issues in New York despite being directed to do so and continues to adjust losses so as to require COMPLETE repair or replacement of the damaged property within 180 days from Actual Cash Value payment as a condition for an insured's receipt of the replacement cost benefits and extended limits endorsement benefits.

61.     As a result of Allstate's pattern and practice of (i) marketing polices not knowingly approved by the Insurance Department of the State of New York; (ii) marketing policies with coverage "less favorable to the insured" than the 165 lines; (iii) breaching its obligations under the policies by failing to conform its policy language to applicable statutes in New York, including the 165 lines; (iv) breaching its obligations under the policies by requiring the insured to COMPLETE repairs or replacement in order to receive the benefits of the replacement cost coverage and/or the extended limits endorsement; (v) breaching their obligations under the polices by adjusting losses in a manner deliberately calculated to justify

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

depriving the insured of the benefits of the replacement cost coverage and/or the extended limits endorsement, plaintiffs and Class members have been deprived and cheated of hundreds of millions of dollars of coverage which they paid for and which was part of the property damage coverage marketed and sold by Allstate to plaintiffs and Class members.

### E. Allstate's Policies Are Contracts Of Adhesion

62.    Plaintiffs and the Class were unable to negotiate or opt into or out of the terms and conditions of the policies at issue herein.

63.    The relevant terms and conditions of the polices at issue herein were drafted by Allstate and not knowingly approved by the State of New York Insurance Department.

64.    Allstate's policy and practice is to refuse to allow its agents to provide to prospective purchasers copies of its polices where they would learn the precise terms and conditions of the coverage they are seeking to purchase.

65.    Allstate does not send a copy of the policy of insurance to the insured until well after the insured has paid the premiums.  Marketing materials, tracts, brochures, websites and correspondence marketing the policies are silent as to the 180 day requirements, or claim the coverage is equivalent to or better than Allstate's competitors.

66.    Plaintiffs and the Class did not therefore have an opportunity to review the policy terms before purchase. By the time that plaintiffs and the Class received the policy, if they had wanted to cancel it would have cost them money.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

**DEFENDANT ALLSTATE BREACHED THE CONTRACTS OF INSURANCE WITH
THE PLAINTIFFS AND CLASS MEMBERS IN A PATTERN AND PRACTICE OF
IMPOSING ILLEGAL POLICY RESTRICTIONS UPON ITS NEW YORK INSUREDS**

67.  Plaintiffs Woodhams and Connors suffered an insured fire loss on January 6,

2007 to their insured real and personal property in Middlesex, New York.  Allstate paid a

portion of the claim but refused to honor its replacement cost coverage because the insured

could not repair or replace the damaged property within the Replacement Period of 180 days.

The construction could not be completed within the Replacement Period of 180 days as it took

six months for a building permit to be issued and a road construction project caused additional

delay.  Allstate refused to pay more than $58,000.00 in insurance proceeds to the insured as a

result.

68.  Confidential Allstate Insured No 1. suffered an insured fire loss to her real and

personal property in Far Rockaway, New York in March of 2007.  Allstate paid a portion of the

loss but refused to pay replacement cost benefits because the insured could not complete the

repairs within the replacement period of 180 days.  Allstate has refused the insured's request

for an extension of the replacement period.  The insured was unable to complete replacement

within 180 days as the mortgagee who was named on the actual cash value checks held the

funds until January 2008, preventing repairs from commencing.

69.  Confidential Allstate Insured No 2. suffered an insured fire loss on November

13, 2005 to his insured real and personal property in Muncie, New York.  Allstate paid a

portion of the claim but refused to honor its replacement cost coverage because the insured

could not complete the repair of the building within the replacement period of 180 days.  The

insured had hired a contractor and was committed to reconstruction of the damaged premises

but the contractor could not obtain all necessary permits and certification of building plans

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

24

within the replacement period. The insured was required to demolish the damage premises prior to reconstruction due to the extent of damage prolonging the time of construction. Allstate refused the insured's request for an extension of the replacement period and refused to pay replacement cost proceeds to the insured.

70. Confidential Allstate Insured No 3. suffered an insured fire loss on January 15, 2006 to their insured real and personal property in Irvington, New York. Allstate paid a portion of the claim but refused to honor its replacement cost coverage because the insured could not repair or replace the damaged property within the replacement period of 180 days because the Irvington Building Department engaged in a lengthy inspection and approval period, the town wanted the house demolished and required a total reconstruction due to the extent of damage. The application went before two committees and required months for approval. Allstate refused to pay $10,904.69 in insurance proceeds to the insureds as a result.

71. Confidential Allstate Insured No 4. suffered an insured fire loss on November 6, 2005 to her insured real and personal property in Mount Vernon, New York. Allstate paid a portion of the claim but refused to honor its 25% extended limits endorsement because, despite the fact that the insured hired a contractor and made a claim for replacement cost within the replacement period of 180 days, the repair or replacement could not be completed within 180 days because the Mount Vernon Building Department and Architectural Review Board did not issue permits necessary for the work to begin within the 180 days replacement period. Allstate never mentioned this 180 day deadline as to the extended limits endorsement in its correspondence until the deadline ran. Allstate refused the insured's request for an extension and withheld over $80,000.00 in insurance proceeds from the insured. The insured who was of modest means had to borrow funds in a similar amount to continue reconstruction.

WILKOFSKY,
FRIEDMAN,
KAREL & COMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

72.     Confidential Allstate Insured No 5. suffered an insured loss to her real and personal property on November 28, 2005 in Rosedale, New York. Allstate paid a portion of the loss but refused to pay the replacement cost funds because the insured could not repair or replace the property within the replacement period of 180 days because the contractor absconded with the funds. Allstate refused to extend the replacement period and refused to pay the insured approximately $40,000 in insurance proceeds.

73.     Confidential Allstate Insured No 6. suffered a pipe break and water damage on August 1, 2006 in Brooklyn, New York. Allstate paid a portion of the loss but refused to pay the replacement cost because the insureds could not repair or replace the damaged property within the replacement period of 180 days. The insureds were unable to complete repairs due to Allstate's underpayment of the loss and grave illnesses suffered by the insureds including a brain tumor which required surgery and a progressive spine disease which pre-occupied the insureds. The unpaid amount of the claim is approximately $60,000.00.

74.     Confidential Allstate Insured No 7. suffered an insured water damage loss on April 27th 2008 in Staten Island, New York. Allstate paid a portion of the loss but refused to pay the replacement cost funds because the insured could not repair or replace the damaged property within the replacement period of 180 days. The insured was unable to complete replacement and repair of the damaged property within 180 days due to Allstate's underpayment of the building loss requiring the insured to use contents payments to complete reconstruction delaying or preventing replacement of clothing and other items of damaged personal property belonging to the insured, his wife and eight children.

75.     Confidential Allstate Insured No 8. suffered a severe water damage on June 15th, 2007 to a home in Windham, New York. Allstate paid a portion of the loss but refused to pay

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

26

the replacement cost funds because the insureds could not repair or replace the damaged property within the replacement period of 180 days. The insureds, a mother and her three adult daughters, were unable to complete repairs within 180 days due to Allstate's underpayment of the claim and resulting delay in locating a qualified architect and builder willing and able to do the necessary work. Allstate has refused to pay approximately $60,000 in insurance proceeds.

76.     Confidential Allstate Insured No 9. suffered an insured fire loss on July 27, 2007 to their real and personal property located on Long Island, New York. Allstate paid a portion of the loss but refused to pay replacement cost funds because the insureds could not complete replacement and repair within the replacement period of 180 days. The insureds were unable to complete the replacement and repair within 180 days due to Allstate's underpayment of the claim and the fact it took almost two months to obtain building permits and significant additional time was required to locate contractors willing to do the work. As a result, Allstate has refused to pay approximately $11,000.

77.     Allstate promised these various insureds and other Class members that they were "in good hands" and would receive fast and fair claims service." Upon the occurrence of these various insured losses, these various Class members learned they were not in "good hands" and received neither "fast" service nor "fair" service.

## COUNT I

**On Behalf Of Plaintiffs And The Class For Return Of A Pro Rated Amount Of Premiums Based Upon Allstate's Issuance And Sale Of Policies Of Insurance In New York Which Were Not Approved By The New York State Insurance Department And Which Violate New York Insurance Law**

78.     Plaintiffs repeat and reallege each allegation above on behalf of the Class consisting of Class members who purchased policies of insurance from Allstate insuring

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

27

property within the State of New York  during the Class Period but who did not suffer a covered loss during the Policy Period for which Allstate paid any insurance proceeds

79.     While Allstate purports to be interpreting the pertinent policy language according to its written terms and conditions, that interpretation and the policy language itself violate the laws of New York, specifically, Insurance Law Section 3404 which prohibits the sale of policies if the policies' terms are less favorable to the insured than the terms of the "standard fire insurance policy of the state of New York" as set forth in New York in Article 34, Section 3404, Chapter 28 McKinney's Consolidated Law of New York Annotated.

80.     The coverage provided by the 165 lines is more extensive and favorable to the insured than the coverage provided by Allstate's standard property damage coverage forms including the Deluxe Policy.  Allstate's policy terms and practices and its interpretation thereof along with its adjustment and loss paying practices for policies of insurance issued in the state of New York afforded to insureds "less favorable coverage" than offered under New York's Standard Fire Insurance Policy.  This violated New York Insurance Law which requires all such coverage in New York to afford no less favorable coverage than offered under the Standard Fire Insurance Policy.

81.     The New York State Insurance Department never knowingly approved Allstate's right to sell the policies containing the 180 day limit in the state of New York.

82.     Allstate sold policies of insurance that did not contain any requirement that repairs or replacement be "COMPLETED" within 180 days.  Nonetheless when Allstate sold the policies to insureds it knew that it intended, and its practice had been, to require COMPLETION of all repairs and replacement as a condition of receiving the replacement cost coverage and/or the Holdback and/or extended limits coverage.

WILKOFSKY,
FRIEDMAN,
KAREL & COMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

28

83.     Accordingly, plaintiffs and Class members have been sold illusory coverage at a price far above the value of the coverage actually provided.

84.     Defendant is liable to Plaintiffs and the Class for a pro rata refund of the premiums allocable to the fair value of the replacement coverage which plaintiffs paid but which Allstate has refused to provide to them and which Allstate never had any intention of providing to plaintiffs except under circumstances that were practically impossible to occur and which defeated and frustrated the coverage for which plaintiffs and members of the Class paid.

85.     Plaintiffs and the Class are therefore entitled to a refund.

## COUNT II

### By Plaintiffs Individually And On Behalf Of The Class For Breach Of Contract

86.     Plaintiffs repeat and reallege each paragraph of this Complaint as is more fully set forth at length herein.

87.     Defendants issued policies of insurance to plaintiffs and Class members which by their terms promised to conform, in their entirely, to the statutes of the state in which the residence premises is located even if policy provisions conflict with the statutes of that state.

88.     Allstate's policies at issue herein conflict with the law in New York which mandates all insurers insuring premises within the state to provide coverage no less favorable than the 165 lines (or the applicable state analogue for states other than New York).

89.     Notwithstanding this conflict, Allstate has not, as required by the contracts of insurance issued to insureds, amended the provisions of its policies to conform to the statutes of the New York State Insurance Law which mandate that all coverage insuring real and personal

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

property within the state of New York "be no less favorable" than that provided by the 165 lines.

90.     Allstate's conduct in issuing policies whose terms conflict with applicable state law and its conduct in adjusting and paying losses in conformity with its interpretation that the insured must complete repair or replacement of damaged, insured property within 180 days of an arbitrary date selected by Allstate as a condition of obtaining the replacement cost coverage and/or extended limits proceeds constitutes a breach of the contract of insurance.

91.     The new policy language (described in paragraph 32 above) has been interpreted by Allstate to require that the Plaintiffs and other Class members COMPLETE all repairs and/or replacement of all property within 180 days of Allstate's payment of the Actual Cash Value loss, as opposed to the prior language which required that Plaintiffs needed only to "make claim" for the benefit of Replacement Cost coverage within the 180 days from the date of loss and did not require the insured to even begin repairs in order to later access the Holdback pursuant to the Replacement Cost coverage once repairs were made. Allstate's refusal to pay replacement cost or the Holdback and/or extended limits coverage until and unless the repairs and replacement were COMPLETED is itself a breach of the new language even if the new language had been approved by the Insurance Department.  As a direct result of Allstate's breach of its contracts of insurance, plaintiffs and members of the Class have suffered loss and damage in an amount to be proven at trial.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

## COUNT III

### By Plaintiffs Individually And On Behalf Of
### The Class Against Defendants For Declaratory Judgment

92.     Plaintiffs, on behalf of themselves and the Class, reallege and incorporate by reference each and every paragraph as if they were set forth again herein.

93.     During the Class Period, Allstate required all it's insureds to complete repairs within 180 days of the payment of the Actual Cash Value loss as a condition for receiving any payment in excess of the Actual Cash Value of the damaged property and/or the extended limits benefits.

94.     Plaintiffs and Class members who have not yet received their Actual Cash Value payouts for covered losses to covered property have been made aware by Allstate that Allstate will only pay replacement cost coverage if the insured has actually repaired or replaced the insured damage property for which claim has been made within the replacement period of 180 days.

95.     As a result of the foregoing there is an actual dispute over the extent of coverage Allstate will provide under the contracts of insurance sold by Allstate to its insureds.

96.     Plaintiffs therefore seek a declaration of their rights under the policies of insurance they purchased from Allstate declaring that an insured who has suffered an insured loss to covered property does not need to complete repair or replacement of the damaged property within 180 days of payment of the Actual Cash Value payment in order to be entitled to the benefits of the replacement cost coverage and/or the extended limits endorsement .

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

## COUNT IV

**By Plaintiffs Individually And On Behalf Of The Subclass For Breach
of The Loss Settlement Contract To Settle Claims According To the Terms
Of The Policies And New York State Insurance Law.**

97.     Plaintiffs repeat and reallege each paragraph of this Complaint as is more fully set forth at length herein.

98.     When the plaintiffs and other Subclass members entered into an agreement with Allstate that resulted in the payment to the insured of the Actual Cash Value of the damaged property, that agreement constituted a contract separate and distinct from, the insurance policy contract. That distinct contract is premised upon the terms of the policy including expressed and implied terms of an obligation and undertaking by Allstate to pay the insured the repair or replacement cost Holdback for the damaged property according to the Insurance Laws of the State of New York and conforming terms and conditions of the insurance policy, as well as the extended limits benefits.

99.     Notwithstanding this separate and distinct contractual obligation, Allstate, in adjusting losses, after the settlement agreement had been entered into, required the insured to COMPLETELY repair or replace damaged property as a condition of obtaining the replacement cost coverage Holdback proceeds and/or the extended limits benefits and constitutes a breach of the settlement contract.

100.     As a direct result of Allstate's breach of its settlement contracts, plaintiffs and members of the Subclass have suffered loss and damage in an amount to be proven at trial.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK.NY
10007
(212) 285-0510

## COUNT V

### By Plaintiffs Individually And On Behalf Of The Class For Fraud

101.   Plaintiffs repeat and reallege each and every paragraph as if more fully set forth herein.

102.   The coverage for replacement cost and the "recoverable depreciation" to which Allstate's insureds, including plaintiffs and members of the Class, are entitled is an explicit term of the polices of insurance that Allstate markets and sells to insureds.

103.   The coverage for extended limits of up to 25 percent beyond the stated policy limit known as the "Building Structure Extended Limits Endorsement" is an explicit term of the policy that Allstate markets and sells to Class members for an additional premium.

104.   Allstate knows and understands that its policies of insurance must conform to the laws, rules and regulations of the states in which the residences and buildings it insures are located.  Allstate's Deluxe Policy explicitly promises that its policy terms and provisions will be amended to conform to any applicable law, rules and regulations of the state in which the insured premises are located.

105.   Allstate knows that the policies of insurance it issues in the State of New York must conform to the 165 lines and provide to its insureds within the state of New York coverage "no less favorable" than the coverage afforded under the 165 lines.  Allstate knows this because it has met and/or spoken with officials at the Insurance Department of the state of New York in 1992, 1996, 2007, 2008 and 2009 specifically with respect to the replacement cost language of its policies and the issues of coverage and adjustment of losses with respect thereto.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

106.    Allstate knows that it has been interpreting its replacement cost policy language, and adjusting covered losses on covered property, in a way that is contrary to the law of New York and its 165 lines as contained in the Insurance Law in New York which requires that coverage be no less favorable to the insured than the 165 lines. It knows that because it has been meeting and speaking with officials of the New York State Department of Insurance and discussing these issues and has been informed that Allstate's policies and practices are not . consistent with the way that other insurers issuing policies in the State of New York have interpreted the required policy language and adjusted covered losses to covered property under the applicable New York State Insurance Laws.

107.    Allstate has intentionally decided to require insureds to complete repair or replacement of their damaged property after covered losses have occurred within 180 days of the date Allstate, by itself, decides to issue a payment based on Actual Cash Value. Allstate's decision to implement such practices are part of its plan to increase profits by "redefining its benefits and payment approach". Allstate knows and understands that its practices are in violation of the laws of the State of New York and of other states with laws analogous to the New York 165 lines.

108.    Allstate knows that its practices and interpretation of the policy language deprives the insured of the full benefits of the coverage that the insured is paying for and entitled to as a matter of the language of the policy and the laws of the state of New York.

109.    Allstate intentionally sells its policies of insurance promising to amend policy terms to conform to applicable laws of the state in which the insured premises are located but Allstate knows that it has no intention of providing the benefits of the coverage to the insureds who purchase such policies.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

34

110.     Allstate's acts of marketing and selling policies with coverage terms and provisions that Allstate has no intention of ever honoring are willful, deliberate and done with full knowledge and intention that Allstate will not fulfill the contractual terms of its coverage.

111.     Plaintiffs and members of the Class have been injured as a result of the fraud in two ways; (1) policyholders have been deprived of coverage for losses to covered property from covered losses; and/or (2) plaintiffs and members of the Class have been duped by Allstate to pay for coverage that Allstate has never had any intention of honoring.

112.     Allstate has published and marketed false advertising which fails to advise the consuming public including Plaintiffs and Class members of the differences between Allstate's non-conforming language and the conforming language utilized by every other insurer in the market place.

113.     Allstate refuses as a regular business practice to allow consumers seeking to purchase its product to see the policy language being purchased until significantly after the purchase is consummated and premiums paid.  This effectively prevents consumers from making an informed and knowledgeable choice and is part and parcel of Allstate's fraud and deception.

114.     As a result of the foregoing Allstate has committed and been involved in a fraud upon its policyholders.

115.     Plaintiffs and other Class members have justifiably relied on Allstate's false and misleading statements, advertising, marketing, policy languages and other misrepresentations.

116.     Plaintiffs seek compensatory and punitive damages for Allstate's fraudulent acts and practices.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510

## COUNT VI

### On Behalf Of Plaintiffs And The Class For Breach Of The Implied
### Covenant Of Good Faith And Fair Dealing For Consequential Loss And Damage

117.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the previous paragraphs, as if more fully and completely set forth at length herein.

118.    Plaintiffs incurred consequential losses, consisting of litigation costs and attorney's fees for collecting the building and personal contents portions of their claim as well as incurring additional living expenses, interest costs, etc. as a result of the conduct alleged.

119.    The parties to this policy necessarily knew and should have known that a breach of the contract by Allstate would necessarily cause Plaintiffs to incur further losses including, but not limited to, legal fees and litigation expenses, interest, costs and further additional living expenses as a consequence of its breach.

120.    Plaintiffs have incurred fees and expenses which diminished their recovery herein, resulting in Plaintiffs not being made whole, directly as a result of Allstate's breach of its contract which expenses were reasonably within the contemplation of the parties when the policy was issued.

121.    Allstate has breached the covenant of good faith and fair dealing that is implicit in the contract of insurance between Plaintiffs and Allstate, by not handling and adjusting Plaintiffs' claim in good faith.

122.    Allstate has breached the covenant of good faith and fair dealing that is implicit in the contract of insurance between Plaintiffs and Allstate, by failing to pay for the covered claims as required, as heretofore stated.

WILKOFSKY,
FRIEDMAN,
KAREL & CUMMINS
ATTORNEYS AT LAW
299 BROADWAY
NEW YORK, NY
10007
(212) 285-0510