UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————————

THOMAS D. WOODHAMS, ET AL.,

                  **Plaintiffs,**          **10 Civ. 441 (JGK)**

      **- against -**            **OPINION AND ORDER**

ALLSTATE FIRE AND CASUALTY COMPANY,
ET AL.,

                 **Defendants.**
————————————————————————————————

JOHN G. KOELTL, District Judge:

    The plaintiffs, Thomas D. Woodhams and Charlene Connors, bring this purported class action asserting several causes of action against the defendants, Allstate Insurance Company ("Allstate Insurance"), Allstate Indemnity Company ("Allstate Indemnity"), Allstate Property & Casualty Insurance Company ("Allstate Property"), and Allstate Fire and Casualty Company ("Allstate Fire") (collectively, "Allstate" or "the defendants"). All of the plaintiffs' claims arise out of Allstate's alleged practice of requiring that insured property owners suffering real property losses due to fire replace or complete repairs of insured property within a 180-day window in order to receive reimbursement for the cost of replacement or repair, an amount that would be higher than the actual cash value of the damaged property. Woodhams and Connors suffered an insured fire loss in 2007 but, because they could not complete repairs within 180 days, were denied replacement cost coverage.

1

The plaintiffs' complaint alleges eight causes of action. Count I seeks the return of a pro-rated portion of the plaintiffs' premiums. Count II alleges a breach of the initial insurance contracts. Count III requests a declaratory judgment. Count IV alleges a breach of contracts settling plaintiffs' claims. Count V alleges fraud. Count VI alleges a breach of the implied covenant of good faith and fair dealing. Count VII claims that Allstate owed the plaintiffs a fiduciary duty, which it allegedly breached. Count VIII requests relief under New York General Business Law ("GBL") section 349, which prohibits deceptive business acts and practices.

Each of these claims, to one degree or another, relies on the plaintiffs' assertion that the 180-day completion requirement is prohibited by New York Insurance Law ("NYIL") section 3404, which sets minimum terms and provisions for fire insurance policies. The plaintiffs also claim that the 180-day completion requirement is inconsistent with the terms of the insurance contracts, and that Allstate misleadingly offered policies promising replacement or repair coverage while knowing that the 180-day completion requirement would bar most losses from coverage.

The plaintiffs brought their action in the New York State Supreme Court, New York County. The defendants subsequently removed the action pursuant to the Class Action Fairness Act of

2005 (CAFA), 28 U.S.C. § 1332(d), and now move to dismiss the plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for judgment on the pleadings pursuant to Rule 12(c). They argue principally that the 180-day completion requirement is not contrary to law and that the filed rate doctrine bars the court from ordering refunds of portions of the plaintiffs' premiums. They also argue that the 180-day completion requirement is consistent with all relevant contracts and that none of Allstate's communications were deceptive or misleading, and that the plaintiffs failed to plead fraud with particularity, in violation of Federal Rule of Civil Procedure 9. Finally, Allstate Fire and Allstate Property argue that the plaintiffs lack standing to sue them, because the plaintiffs never contracted with Allstate Fire or Allstate Property.

## I.

### A.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiffs' favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007); Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). The Court should not dismiss the complaint if the

plaintiffs have stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.; see also SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009). The standards to be applied to a motion pursuant to Rule 12(c) are the same as those applied to a motion pursuant to 12(b)(6). See, e.g., Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006).

In deciding the motion, the Court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that either are in the plaintiffs' possession or were known to the plaintiffs when they brought suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993).

B.

The following facts are undisputed, unless otherwise noted.

Allstate Fire, Allstate Indemnity, and Allstate Property are each subsidiary companies of Allstate Insurance. (Compl. ¶ 12-13.) Allstate sells property insurance policies in New York that cover, among other things, damage due to fire. (Id. ¶ 1.)

In the early 1990s, Allstate[1] allegedly sought to increase its profits by reducing the number and amount of claims it paid out. (Id. ¶¶ 21-28.) In furtherance of this goal, it changed the language in its property damage policies regarding coverage of replacement or repair costs. Prior to the change, the language read:

> If you decide not to repair or replace the damage[d] property, settlement will be on an actual cash value basis, not to exceed the limit of liability applicable to the building. You may make claim within 180 days after the date of the loss for any additional payment on a replacement cost basis if you repair the damaged property.

(Id. ¶ 30.) The plaintiffs point out that this language only required a policyholder to make a claim for this additional replacement cost coverage within 180 days of the date of loss.

---

[1] Most of the plaintiffs' allegations refer to "Allstate" as a single entity, rather than to the defendants individually. Although, as discussed below, this does not suffice to attribute some of the alleged conduct to individual defendants, it is unnecessary to distinguish among the Allstate companies in this summary of facts.

5

It did not require that repairs be completed within any period of time.

In the mid-'90s, Allstate revised this policy to state the following:

> If you do not . . . repair or replace the damage[d] building structure, payment will be on an actual cash value basis . . . . You may make claim for additional payment . . . if you repair or replace the damaged, destroyed, or stolen covered property within 180 days of the actual cash value payment.

(Id. ¶ 32.) The policy also stated that "[w]hen the policy provisions conflict with the statutes of the state in which the residence premises is located, the provisions are amended to conform to such statutes." (Sisson Decl. Ex. B at 4.)

The New York State Insurance Department ("NYSID") approved this language in 1994. (Wittman Decl. Exs. A, C.)[2] Since then, Allstate has issued policies with this language. (Compl. ¶ 34.) Although NYSID rejected a revised form that Allstate submitted in 2009, because of the 180-day completion requirement, the complaint does not allege that NYSID ever withdrew the approval issued in 1994. (Id. ¶¶ 56-60, Ex. C.)

---

[2] In their complaint, the plaintiffs state that NYSID "rejected" Allstate's changed language. (Compl. ¶ 33.) In their brief and at argument, the plaintiffs have conceded that NYSID did, in fact, approve the new form language, although they now contend that NYSID did not do so "knowingly." (Pl. Mem. Opp. Def.'s Mot. Dismiss ("Pl. Mem.") 4-5; Hr'g Tr. 23, July 1, 2010.)

Allstate interpreted its language to require that repairs or replacements be completed within 180 days of the date that it paid claimants the actual cash value of the covered property. (Id. ¶¶ 35-37.) Thus, under Allstate's interpretation, Allstate's policies entitle its insured to both the actual cash value of the insured property and, if repairs or replacements were completed within 180 days of the actual cash value payment, the cost of repair or replacement. (Certain exclusions that are irrelevant here also apply.)

Allstate allegedly failed to disclose and, according to the complaint, "intentionally obscured and concealed" the terms of its replacement cost coverage. (Id. ¶¶ 35, 64-66.) The plaintiffs allege that Allstate has a "policy and practice" of "refus[ing] to allow its agents to provide to prospective purchasers copies of its policies where they would learn the precise terms and conditions of the coverage they are seeking to purchase," and that "Allstate does not send a copy of the policy of insurance to the insured until well after the insured has paid the premiums." (Id. ¶¶ 64-65.) Attached to the complaint is a printout of a summary of Allstate's property insurance offerings taken from Allstate's website. (Id. Ex. B.) The website states that Allstate's policies can cover repair or replacement costs, not to exceed 120% of applicable coverage limits, accompanied by a disclaimer that "all coverages are

7

subject to availability and qualifications. Other terms, conditions and exclusions apply. . . . Please read your Allstate policy for full coverage details." (Id. Ex. B at 2-4.)


C.


Woodhams and Connors suffered an insured fire loss on January 6, 2007, to real and personal property that was insured by Allstate Indemnity. (Id. ¶ 67, Sisson Decl. Ex. A.) Because Woodhams and Connors were unable to obtain a building permit for six months, and because of a road construction project, they were unable to complete construction within the 180-day replacement period, and Allstate refused to pay over $58,000 in replacement costs. (Compl. ¶ 67.)

In support of its class allegations, the complaint cites similar occurrences involving nine unnamed Allstate insureds. (Id. ¶¶ 68-76.)


II.


The defendants argue that the above facts fail to state a claim, and therefore move for dismissal under Federal Rule of Civil Procedure 12(b)(6) or for judgment on the pleadings under

Federal Rule of Civil Procedure 12(c).[3] Although they argue against each count of the complaint individually, each count turns to some degree on the same two questions: whether Allstate's 180-day completion requirement is inconsistent with NYIL § 3404, and whether the requirement is inconsistent with the language of the Allstate policies themselves. Before addressing the plaintiffs' individual claims, these issues will be analyzed at the outset.

---

[3] Allstate Fire and Allstate Property separately move for dismissal under Federal Rule of Civil Procedure 12(b)(1), noting that the plaintiffs did not allege that they were insured or injured by Allstate Fire or Allstate Property. However, "standing questions may be deferred until after a class has been certified, because class certification issues are "'logically antecedent' to Article III concerns." Pietra v. RREEF Am., L.L.C., No. 09 Civ. 7439, 2010 WL 3629597, at *5 n.1 (quoting Ortiz v. Fibreboard Corp., 527 U.S. 815, 830 (1999)). See also Hicks v. Morgan Stanley & Co., No. 01 Civ. 10071, 2003 WL 21672085, at *5 (S.D.N.Y. July 16, 2003) ("[W]here the proposed class representatives have claims against some but not all of the defendants named in the class action . . . the issue is properly analyzed under Rule 23(a)(4) rather than Article III." (citing 1 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 2:9 (4th ed.))). Because the plaintiffs unquestionably have standing to sue Allstate Indemnity and Allstate Insurance, and because the allegations against each defendant are substantively identical and, as discussed below, must be dismissed, there is no need to reach the class certification inquiry and therefore no need to ascertain whether the named plaintiffs could represent a class of Allstate Fire or Allstate Property policyholders. See Pietra, 2010 WL 3629597, at *5 n.1.

A.


New York law sets out a standard fire insurance policy, which provides that insured parties shall be entitled to "THE LESSER AMOUNT OF EITHER:"

> 1) THE ACTUAL CASH VALUE OF THE PROPERTY AT THE TIME OF THE LOSS, OR
>
> 2) THE AMOUNT WHICH IT WOULD COST TO REPAIR OR REPLACE THE PROPERTY WITH MATERIAL OF LIKE KIND AND QUALITY WITHIN A REASONABLE TIME AFTER SUCH LOSS, WITHOUT ALLOWANCE FOR ANY INCREASED COST OF REPAIR OR RECONSTRUCTION BY REASON OF ANY ORDINANCE OR LAW REGULATING CONSTRUCTION OR REPAIR, AND WITHOUT COMPENSATION FOR LOSS RESULTING FROM INTERRUPTION OF BUSINESS OR MANUFACTURE, OR
>
> 3) TO AN AMOUNT NOT EXCEEDING ____ DOLLARS . . . .

NYIL § 3404(e).

Policies covering the peril of fire in New York must either conform to the standard fire policy, or be approved by NYSID and "contai[n], with respect to the peril of fire, terms and provisions no less favorable to the insured than those contained in the standard fire policy." Id. § 3404(b)(1), (f). See generally SR Intern. Bus. Ins. Co. v. World Trade Center Props., LLC, 381 F. Supp. 2d 250, 257-58 (S.D.N.Y. 2005).

The plaintiffs argue that the relevant terms of Allstate's policies provide "less favorable" coverage than this standard policy. The standard policy, however, clearly sets a minimum

floor of the <u>lesser</u> of the three options. Thus, any policy that provides a minimum of actual cash value is no less favorable than the standard policy, because the standard fire policy would not obligate an insurer to pay more than the actual cash value in any circumstances. Accordingly, the Allstate policy is not inconsistent with New York law, because it was approved by NYSID and provides actual cash value (and, if certain conditions are met, replacement or repair value as well).

The plaintiffs argue that the statute "entitles the insured to recover the greater amount once repair has occurred." (Pl. Mem. 14.) But that is plainly not what the statute provides. The plaintiffs also argue that Allstate concedes that its policies are in "total derogation" of the statute (Pl. Mem. 12), but Allstate has made no such concession. The plaintiffs also claim that NYSID has requested that Allstate cease using the language at issue, and that NYSID never "knowingly" approved Allstate's language because Allstate misled it. The former argument is not supported by the complaint or the attached exhibits, which only show that NYSID has rejected the submission of a revised form that contained a completion requirement. (Compl. Ex. C.) The latter allegation, even if true, does not appear to have any legal significance; the plaintiffs have provided no authority for the proposition that a federal court has the power to void the NYSID's approval of a policy form, in the absence of the

11

NYSID's withdrawal of approval under NYIL section 2307(b), based on the court's analysis of the state of NYSID's knowledge. If the plaintiffs believe that the NYSID was ill advised in approving Allstate's policy language, its proper remedy is a complaint to the NYSID. See Wegoland Ltd. V. NYNEX Corp., 27 F.3d 17, 21 (2d Cir. 1994) ("Apart from participating in the political process and filing complaints with the regulatory agencies, individual ratepayers simply have no role in attacking the reasonableness of filed rates.").

Accordingly, the 180-day completion requirement is not barred by New York law.


B.


The plaintiffs also rely heavily on their argument that the 180-day completion requirement is inconsistent with the language of Allstate's policies. As the plaintiffs argue, any ambiguity in the terms of an insurance policy "must be construed in favor of the insured and against the insurer." White v. Continental Cas. Co., 878 N.E.2d 1019, 1021 (N.Y. 2007). Therefore, if Allstate's language can reasonably be construed to allow for reimbursement of repairs or replacements that are not completed within 180 days, Allstate cannot refuse to cover such reimbursements. On the other hand, "contracts of insurance, like

other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous the terms are to be taken and understood in their plain, ordinary and proper sense." <u>In re Estates of Covert</u>, 761 N.E.2d 571, 576-77 (N.Y. 2001) (quoting <u>Hartol Prods. Corp. v. Prudential Ins. Co. of Am.</u>, 47 N.E.2d 687, 689 (N.Y. 1943)) (brackets omitted)).

The plaintiffs argue that the policy language does not contain any requirement that the repairs be "completed" within 180 days of the actual cash value payment. (Compl. ¶ 82.) The policy language, however, is not ambiguous, and does not support the plaintiffs' position.

Two provisions of the plaintiffs' policy address this issue. Section I Conditions, Number 5(b), entitled "Actual Cash Value," provides:

> If you do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. . . .
>
> <u>You may make claim for additional payment</u> as described in paragraph "c" and paragraph "d," <u>if you repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.</u>

(Sisson Decl., Ex. G at 18 (emphasis added).)

Section I Conditions, Number 5(c), entitled "Building Structure Reimbursement," provides:

> Under Coverage A — Dwelling Protection and Coverage B
> — Other Structures Protection, <u>we will make additional</u>
> <u>payment to reimburse you for cost in excess of actual</u>
> <u>cash value if you repair, rebuild or replace damaged,</u>
> <u>destroyed or stolen covered property within 180 days</u>
> <u>of the actual cash value payment.</u> This additional
> payment includes the reasonable and necessary expense
> for treatment or removal and disposal of contaminants,
> toxins or pollutants as required to <u>complete</u> repair or
> replacement of that part of a building structure(s)
> damaged by a covered loss.

(<u>Id.</u> (emphasis added).)

These provisions plainly require that the claim for
additional payment be for a repair or replacement "within" 180
days of the actual cash payment. Moreover, the additional
payment is to "reimburse" a policyholder for costs in excess of
the actual cash value if the policyholder repairs, rebuilds, or
replaces damaged property "within" 180 days of the actual cash
value payment.

The word "within" is a word of limitation. <u>See</u> <u>Webster's II</u>
<u>New Riverside Dictionary</u> 1324 (1988) (defining "within" to mean,
relevantly, "[i]nside the fixed limits of: not beyond"). The
word "reimburse" means "repay" or "pay back or compensate (a
person) for money spent or for losses or damages incurred." <u>Id.</u>
at 991.

These provisions unambiguously provided for repayment to
the policyholder for actual expenses paid to restore the
property in this period up to 180 days after the actual cash

14

value payment is made. It is not sufficient that a repair is begun within that period.

The plaintiffs also argue that the use of the word "complete" in the final sentence of Condition Number 5(c), as set out above, indicates that repairs need not be "completed" within 180 days because Allstate knew how to use the word "complete" when it wanted to. This argument is without merit. The use of the word "complete" to describe what pollution abatements can be included in a repair does not broaden in any way the temporal limitation on the repairs that must be reimbursed, which are limited to the repairs done within 180 days of the actual cash value payment.

Similarly, the fact that Allstate uses different language in provisions in different states does not create an ambiguity in the language used in its New York policies.

Accordingly, the 180-day completion requirement does not conflict with the contractual language or with the policy forms approved by NYSID.

**III.**

These conclusions are dispositive of some, but not all, of the plaintiffs' specific claims. In any event, each claim should be dismissed for failure to state a claim.

A. Count I: Return of Premiums for Violation of Section 3404

The plaintiffs' first claim is for a return of the portion of the premiums paid by class members for replacement or repair cost coverage, or for the optional extension of that coverage. As discussed above, the policies did not violate section 3404, and therefore this claim must fail.

The plaintiffs' demand is also barred by the filed rate doctrine. The filed rate doctrine "bar[s] plaintiffs' claims seeking the recovery of insurance premiums that have been approved by the [NYSID]." Roussin v. AARP, Inc., 664 F. Supp. 2d 412, 416 (S.D.N.Y. 2009), aff'd No. 09-4932-cv, 2010 WL 2101912 (2d Cir. May 26, 2010) (summary order). Because "legislative bodies design agencies for the specific purpose of setting uniform rates" and "courts are not institutionally well suited to engage in retroactive rate-setting," courts typically do not provide relief from premiums alleged to be unreasonable or otherwise inappropriate. Wegoland, 27 F.3d at 19 (internal quotation omitted). "[T]he doctrine is applied strictly to prevent a plaintiff from bringing a cause of action even in the face of apparent inequities whenever either . . . strand underlying the doctrine is implicated by the cause of action the plaintiff seeks to pursue." Marcus v. AT&T Corp., 138 F.3d 46,

16

59 (2d Cir. 1999). There is no exception to the filed rate
doctrine based on an alleged fraud on the rate maker. See
Wegoland, 27 F.3d at 22.

Count I claims, in essence, that portions of Allstate's
policies are worthless and illegal. It seeks a refund of a
portion of the premium charged for the policies. Because these
policies and the premiums associated with them were approved by
NYSID, Count I is a direct challenge to the reasonableness of
the filed rates, and is therefore barred by the retroactive
rate-setting strand of the filed rate doctrine.

The plaintiffs argue that the Court would not need to
"readjust the rates or recalculate the rates or determine
whether the rates were fairly set" because "Allstate itself
calculated the rate for the replacement coverage and indicated
it to the departments New Jersey Insurance Department [sic]."
(Pl. Mem. 25.) "Thus, all the Court is being asked to do in this
case is to refund a specific amount for which Allstate Insurance
received a premium but failed to honor." (Id.) This type of
piecemeal attack on a filed rate is barred just as is a claim
against a rate as a whole. See Roussin, 664 F. Supp. 2d at 417-
18. As Judge Marrero explained, "to condone such an approach
would gut the filed rate doctrine, as any future complainant
would allege injuries stemming from only particular portions of
a filed rate, rather than the entire rate." Id. at 418. Even if

17

this were not the case, evidence of the proportionate value of a component of coverage in another state sheds little if any light on the value of that component in New York State, which is governed by a wholly different regulatory regime.

In their brief, the plaintiffs also recast their claim as one for "refunds and/or rescission." (Pl. Mem. 26.) The only case that the plaintiffs cite in support of this theory is Dornberger v. Metro. Life Ins. Co., 961 F. Supp. 506 (S.D.N.Y. 1997). The insurance policies at issue in Dornberger, however, were issued without proper authorization and therefore were not subject to the filed rate doctrine. See id. at 514. Thus, even if the plaintiffs were to replead Count One as a claim for rescission, Dornberger provides no support.[4]

---

[4] None of the other cases cited in the plaintiffs' motion papers as rejecting defenses based on the filed rate doctrine appear to provide any more support. Some of them, like Dornberger, did not address the filed rate doctrine at all. See Cnty. of Suffolk v. Long Island Lighting Co., 907 F.2d 1295 (2d Cir. 1990); Alaska Cargo Transp., Inc. v. Alaska R.R. Corp., 834 F. Supp. 1216 (D. Alaska 1991), aff'd 5 F.3d 378 (9th Cir. 1993). Because the filed rate doctrine was "neither brought to the attention of the court nor ruled upon" in these cases, they do not constitute precedents on the issue. Webster v. Fall, 266 U.S. 507, 511 (1925). Most of the cases involve claims that a regulated entity had failed to charge its approved rates. See, e.g., Lentini v. Fidelity Nat'l Title Ins. Co. of N.Y., 479 F. Supp. 2d 292 (D. Conn. 2007); Randleman v. Fidelity Nat'l Title Ins. Co., 465 F. Supp. 2d 812 (N.D. Ohio 2006); Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc., 253 F. Supp. 2d 262 (D. Conn. 2003); Black Radio Network, Inc. v. NYNEX Corp.. 44 F. Supp. 2d 565 (S.D.N.Y. 1999). Such cases have no bearing on the plaintiffs' claims. Others involve claims of consumer fraud or deceptive sales practices rather than a challenge to the filed rates. See, e.g.,

18

B. Count II: Breach of Contract


The plaintiffs' second count alleges that Allstate breached the terms of its insurance policies by requiring completion of repairs or replacement within 180 days. As discussed above, this claim is meritless and is therefore dismissed.


C.  Count III: Declaratory Judgment


The plaintiffs' third count requests a declaratory judgment holding that Allstate policyholders need not complete repairs or replacements within 180 days to be entitled to reimbursement for those costs. A declaratory judgment is appropriate only "[i]n a case of actual controversy." 28 U.S.C. § 2201(a); see generally MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007). Because, as discussed above, the 180-day completion requirement is consistent with both New York law and the language of Allstate's policies, the plaintiffs are not entitled to a declaratory judgment in their favor.

---

Zangara v. Travelers Indem. Co. of Am., 423 F. Supp. 2d 762 (N.D. Ohio 2006), vac'd, No. 1:05CV731, 2006 WL 2252542 (N.D. Ohio Mar. 30, 2006). While these cases may be relevant to Counts V or VIII, they do not affect the defendants' challenge to Counts I, III, and VII.

D.   Count IV: Breach of Settlement Contract

The plaintiffs' fourth count alleges that a distinct contract between the plaintiffs and Allstate was formed when Allstate agreed to pay the actual cash value of the plaintiffs' damaged property, and that Allstate breached this contract by failing to conform its handling of the plaintiffs' claims to section 3404 or the terms of its policies. Allstate disputes that any such distinct contract existed.

This claim fails because the plaintiffs have failed to allege the terms of any new contract between themselves and Allstate that somehow differed from the terms of the original insurance contract. They have also failed to allege that there was consideration for any new agreement. To the extent that the plaintiffs are simply repackaging their arguments as to what their insurance policy provided, this claim fails because Allstate's interpretation of the policy is consistent with section 3404 and the language of the policies.

E.   Count V: Fraud

The plaintiffs' fifth count alleges that Allstate committed fraud by (a) promising to amend its policy to conform with New

20

York law but failing to do so; (b) marketing and selling policies with coverage terms that it did not intend to honor; (c) publishing and marketing false advertising "which fail[ed] to advise the consuming public . . . of the differences between Allstate's nonconforming language and the conforming language utilized by every other insurer in the market place"; and (d) "refus[ing] as a regular business practice to allow consumers seeking to purchase its product to see the policy language being purchased until significantly after the purchase is consummated and premiums paid." (Compl. ¶¶ 102-16.)

"Under New York law, to state a claim for fraud a plaintiff must demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." Wynn v. AC Rochester, 273 F.3d 153, 156 (2d Cir. 2001). Where a plaintiff pleads fraud by omission, "it must prove additionally that the plaintiff had a duty to disclose the concealed fact." Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc., 500 F.3d 171, 181 (2d Cir. 2007).

Allegations of fraud are governed by the heightened pleading standard set forth in Federal Rule of Civil Procedure Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances

constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). In order to meet the heightened pleading standard provided by Rule 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Fraudulent statements or conduct must be attributed to each defendant individually; "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). The defendants argue that Count V fails to plead fraud with particularity.

None of the plaintiffs' theories of fraud are successfully pleaded with particularity. First, as discussed above, Allstate neither failed to conform its policies to New York law nor failed to honor the terms of its policies, so no claim of fraud can be premised on a claim to the contrary. Second, the plaintiffs have failed to allege with particularity any fraudulent or misleading advertising or other representations made by any defendant, let alone each defendant. The only particular statement or set of statements identified by the plaintiffs is the webpage printout attached to their complaint.

Given that the webpage expressly stated that "all coverages are subject to availability and qualifications. Other terms, conditions and exclusions apply," it was neither misleading in offering replacement or repair coverage nor could a plaintiff have reasonably relied on it as foreclosing the possibility of a 180-day completion requirement. (Compl. Ex. B at 2-4.) Nothing about these representations was misleading or gave rise to a duty to disclose the exact terms of Allstate's policies. Third, the plaintiffs have not alleged any facts that would give Allstate a duty to disclose that its policy varied from the policies offered by other insurers.

To the extent that the plaintiffs complain that they were not provided with their policies before they purchased the policies, the plaintiffs do not allege that they did not receive the policies after purchase or that they were unaware of what the policies provided before they sustained a covered loss. Indeed, the gist of part of their fraud allegations is that they assert, incorrectly, that the policies contained terms that Allstate did not intend to honor.

Additionally, the plaintiffs have not alleged with particularity any fraudulent conduct on the part of Allstate Fire or Allstate Property, nor any resulting injury. The complaint does not attribute any specific policy language or representations to those defendants; indeed, it does not

23

attribute any conduct to them whatsoever. Nor does it allege that Woodhams, Connors, or any of the unnamed policyholders took out policies from, made claims to, or even had any contact with Allstate Fire or Allstate Property. The plaintiffs argue that the court should look past these omissions under the "group pleading" doctrine, because the four defendants are allegedly engaged in a joint enterprise. The group pleading doctrine is a limited exception to the requirement of alleging fraudulent statements by each defendant, an exception that has been applied only in the context of securities fraud and only to "those individuals with direct involvement in the everyday business of the company." Polar Int'l Beverage Corp. v. Reeve, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (internal quotation omitted). See also Ouaknine v. MacFarlane, 897 F.2d 75, 80 (2d Cir. 2000). Moreover, the complaint is still "insufficient to link [Allstate Fire or Allstate Property] to the [alleged] misrepresentations," such as they are. See Ouaknine, 897 F.2d at 80. The plaintiffs have alleged nothing about Allstate Fire or Allstate Property beyond the fact that they are "wholly owned subsidiaries of Allstate [Insurance] which market and sell the policies of insurance purchased by Class members." (Compl. ¶ 13.) See DiVittorio v. Equidyne Extractive Indus., 822 F.2d 1242, 1249 (2d Cir. 1987) (holding that an allegation that one defendant is a "subsidiary . . . which serves as a manager and syndicator" of

another defendant is insufficient to charge the subsidiary "with liability for representations" in the parent's filing).

Accordingly, Count V must be dismissed for failure to plead fraud with particularity.[5]

F.   Count VI: Breach of the Implied Covenant of Good Faith and
Fair Dealing

The plaintiffs' sixth count alleges that Allstate failed to handle and adjust the plaintiffs' claim in good faith, and failed to pay for the covered claims "as required." (Compl. ¶¶ 121-22.) "As in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." Bi-Economy Market, Inc. v. Harleysville Ins. Co. of N.Y., 886 N.E.2d 127, 131 (N.Y. 2008) (internal quotation omitted). Nevertheless, "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith

---

[5] Allstate Insurance also argues that Count V is barred by the filed rate doctrine. While the filed rate doctrine may limit the measures of damages that are available to successful plaintiffs, it does not invariably bar consumer fraud claims altogether. See, e.g., Gelb v. Am. Tel. & Tel. Co., 813 F. Supp. 1022, 1026-32 (S.D.N.Y. 1993). Because the plaintiffs' have not adequately pleaded fraud, there is no need to determine the applicability of the filed rate doctrine to this count.

and fair dealing when a breach of contract claim, based on the same facts, is also pled," nor does it recognize "an independent cause of action for bad faith denial of insurance coverage." Vitrano v. State Farm Ins. Co., No. 08 Civ. 103, 2008 WL 2696156, at *3 (S.D.N.Y. July 8, 2008) (internal quotation omitted, alteration in original). Instead, an alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim; in other words, the allegations in Count VI should have been pled under Count II, to the extent that they are not duplicative. In any event, as discussed above, neither of the plaintiffs' theories are supported by the facts alleged, because Allstate paid the plaintiffs according to the terms of their contract and the plaintiffs have not alleged any other deficits in Allstate's handling or investigation of the plaintiffs' insurance claims.

G.   Count VII: Breach of Fiduciary Duty

The plaintiffs' seventh count alleges that Allstate assumed a fiduciary duty toward its policyholders and violated that duty. As a general rule, insurance companies do not owe their policyholders a fiduciary duty under New York law, a principle that goes back over a century. See Uhlman v. N.Y. Life Ins. Co., 17 N.E. 363, 364-65 (N.Y. 1888); see generally Rabouin v. Metro.

26

Life Ins. Co., 699 N.Y.S.2d 655, 656-57 (Sup. Ct. 1999), aff'd
723 N.Y.S.2d 651 (App. Div. 2001). While there are situations in
which a fiduciary duty may be created between an insurer and its
policyholders, "those instances are the exception rather than
the rule." Rabouin, 699 N.Y.S.2d at 657. There is some
disagreement in recent cases as to whether representations made
in the course of advertising and solicitation can create a
fiduciary relationship, or whether a fiduciary relationship only
exists where an insurer defends its policyholder. Compare
Dornberger, 961 F. Supp. at 546-47 (finding a jury question
where an insurer had "sought out [the plaintiffs] through an
advertising campaign aimed at assuaging their concerns and
promising personalized service to handle questions and
problems"), with Fiala v. Metro. Life Ins. Co., 776 N.Y.S.2d 29,
32 (App. Div. 2004) ("[A]n insurance company does not owe its
policyholder a common-law fiduciary duty except when it is
called upon to defend its insured . . . ."), and Rabouin, 699
N.Y.S.2d at 657 n.1 (rejecting Dornberger).

There is no need to resolve whether Dornberger was
correctly decided, because the complaint does not allege a
breach of any fiduciary duty that might exist. The complaint
alleges only that Allstate had a "pattern and practice of
breaching [its] obligations under the polices [sic] by adjusting
losses in a manner deliberately calculated to justify depriving

27

the insured of the benefits of the replacement cost coverage."
(Compl. ¶ 129.) As discussed above, Allstate did not breach any
obligations under its policies or under New York law, and
therefore the allegations in Count VII must be dismissed.

H.   Count VIII: New York General Business Law § 349

The plaintiffs' final count alleges that Allstate "engaged
in misleading and deceptive conduct by denying Plaintiffs'
specified claims without basis," and that Allstate and its
agents' "misleading, egregious and deceptive actions . . . in
refusing to acknowledge, process and pay Plaintiffs' claims
promptly, constitute deceptive business acts and practices," in
contravention of GBL section 349. (Compl. ¶¶ 133, 135.) To plead
a claim under section 349, a plaintiff must allege "conduct of
the defendant that is consumer-oriented" and make "a showing
that defendant is engaging in an act or practice that is
deceptive or misleading in a material way and that plaintiff has
been injured by reason thereof." Oswego Laborers' Local 214
Pension Fund v. Marine Midland Bank, 647 N.E.2d 741, 744 (N.Y.
1995). Unlike a claim for fraud, a plaintiff need not show
reliance or satisfy the particularity requirement of Rule 9. See
Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).

28

The defendants argue that the plaintiffs allege only a
private contract dispute that is outside the scope of section
349 and, alternatively, that the plaintiffs' allegations rely on
the same flawed contractual arguments as the rest of their
complaint. As to their first argument, while "'[p]rivate
contract disputes unique to the parties . . . would not fall
within the ambit of the statute,'" "relief under the statute is
not necessarily foreclosed by the fact that the transaction
involved an insurance policy." N.Y. Univ. v. Continental Ins.
Co., 662 N.E.2d 763, 770-71 (N.Y. 1995) (quoting Oswego
Laborers, 647 N.E.2d at 744) (alterations in original). The New
York Court of Appeals has held that contracts in which a
business "dealt with plaintiffs' representative as any
customer," using "standard documents" that "were not unique to
these two parties . . . or a single shot transaction" are the
sort of "consumer-oriented" conduct that is within the scope of
section 349, "in the sense that they potentially affect
similarly situated consumers." Oswego Laborers, 647 N.E.2d at
744 (internal quotation omitted). Plainly, the allegations in
the complaint concern such consumer-oriented conduct,
notwithstanding the fact that the allegedly deceptive practices
produced individual contract disputes.

However, the only allegedly misleading and deceptive
conduct that the plaintiffs cite in setting out Count VIII is

that of "denying Plaintiffs' specified claims without basis" and "refusing to acknowledge, process and pay Plaintiffs' claims promptly." (Compl. ¶¶ 133, 135.) For the reasons explained above, Allstate's handling of the plaintiffs' coverage claims was entirely consistent with the terms of its policies, and thus was not misleading or deceptive. Accordingly, Count VIII should be dismissed as well.

CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, they are either moot or without merit. For the reasons explained above, the motions to dismiss the complaint in its entirety pursuant to Rule 12(b)(6) and Rule 12(c) are **granted** as to all defendants. The defendants' other motions are **denied** as moot. The complaint is therefore **dismissed without prejudice**. The Clerk is directed to close docket numbers 8, 10, 12, 14, and 16.

**SO ORDERED.**

**Dated:**    **New York, New York**
             **September 28, 2010**

                                    John G. Koeltl
                               United States District Judge